### METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE, Plaintiff,

v.

### Holly BUSKIRK, individually and as Parent and Natural Guardian of Nicholas Buskirk, a minor, and Nicholas Buskirk, a minor, Defendant.

No. IP 96–1763–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 6, 1997.

Thomas E. Wheeler, II, Kightlinger & Gray, Indianapolis, IN, for Plaintiff.

Colleen M. Cotter, Legal Services, Bloomington, IN, for Defendant.

## ENTRY DISMISSING COMPLAINT

BARKER, Chief Judge.

Nicholas Buskirk, a student in the Metropolitan School District of Martinsville (School District), has been evaluated as suffering from an emotional handicap. Pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.,* and to the Indiana law and regulations complementing that federal legislation, an Individualized Education Program (IEP) has been developed for Nicholas. Nicholas's mother and guardian, Holly Buskirk, and the School District have been at odds with one another over Nicholas's IEP and certain other actions the School District has taken with respect to Nicholas. On December 4, 1996 the School District filed a Complaint against Holly Buskirk, in her individual and custodial capacities, and against her son Nicholas, first, to enforce an administrative decision relating to Nicholas's IEP and, second, to request that the Court appoint an educational surrogate parent to assume Holly Buskirk's role in reviewing and approving future decisions about Nicholas's education. On September 10, 1996, prior to the School District's filing of this Complaint, Nicholas's mother filed a state administrative proceeding challenging the School District's implementation of Nicholas's IEP. Presently before the Court is the School District's motion to stay that state administrative proceeding on the grounds that the School District would suffer irreparable harm if the administrative proceedings were to go forward. However, for the reasons that follow, the Court finds that it lacks subject matter jurisdiction over the School District's Complaint. Accordingly, the Court dismisses sua sponte the School District's Complaint without prejudice and without reaching the merits of the School District's pending motion.

Before beginning our discussion of the Court's jurisdiction, a brief discussion of the framework of the IDEA is appropriate. Congress passed the Individuals with Disabilities Education Act to "assure that all children with disabilities have available to them ... a free appropriate public education...." 20 U.S.C. § 1400(c). The Act requires states, in order to qualify for certain financial assistance, to assure that "all children residing in the State who are disabled, regardless of the severity of their disability, and who are in need of special education and related services are identified, located, and

evaluated...." 20 U.S.C. § 1412(2)(C). The Act seeks to ensure, to the "maximum extent appropriate," that children with disabilities are educated alongside those children who do not have disabilities. 20 U.S.C. § 1412(5). The primary substantive right created to implement the congressional goal of appropriate public education for children with disabilities is the "individualized education program" (IEP), which the Act mandates must be structured for each individual disabled child. *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). The individualized education program is a written statement prepared by the school district after conferences and meetings with the child's parents, the child's teacher, and school district representatives, that sets forth the child's educational level and performance and establishes annual goals and short term instructional objectives. *Id.* at 311, 108 S.Ct. at 597; 20 U.S.C. § 1401(20). See generally *Rodiriecus L. v. Waukegan School Dist. No. 60,* 90 F.3d 249, 251–52 (7th Cir.1996), for the above description of the Act's purposes.

As well as providing substantive rights for the education of children with disabilities, the Act also mandates that state educational agencies "establish and maintain procedures in accordance with [the Act] to assure that children with disabilities and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units." 20 U.S.C. § 1415(a). Under the procedural rules of the Act, if the parents (or guardian) of a disabled child object to some aspect of the child's educational program, the parents are entitled to an "impartial due process hearing" before a local educational agency. 20 U.S.C. § 1415(b)(2). Local agency decisions may be appealed to a state educational agency, and if the results in this forum prove unsatisfactory, the parents may bring a civil action in state or federal court. 20 U.S.C. § 1415(c), (e)(2). See generally *Rodiriecus L.,* 90 F.3d at 252.

### I. Statement of Facts

In Nicholas's case, the representatives of the School District and Ms. Buskirk held a case conference on September 24, 1991 to develop an IEP for Nicholas. The resulting program called for Nicholas to be placed in a self-contained classroom for the emotionally handicapped. Ms. Buskirk objected to this placement and has repeatedly challenged the School District's handling of her son's case before independent hearing officers (IHOs) of the Indiana Department of Education (IDOE), before IDOE's Board of Special Education Appeals (BSEA), and before the U.S. Department of Education's Office for Civil Rights (OCR).

The School District's Complaint seeks enforcement of an administrative decision and certain administrative interim orders issued by two IHOs. The decision and orders had their genesis in a March 22, 1995 request by Ms. Buskirk for a due process hearing with the IDOE, alleging that the School was not providing Nicholas with a free appropriate public education. This request was assigned to IHO James F. Roth as Due Process Hearing No. 815–95. Following a four-day hearing conducted in the spring and summer of 1995, IHO Roth issued a decision on July 24, 1995 finding that the School District's proposed IEP was generally appropriate, but that Nicholas needed a more detailed and structured behavioral management program (BMP) to accommodate his violent behavior. To this end, IHO Roth ordered that Nicholas be placed in a self-contained emotionally handicapped class at the District's middle school and that the School District's proposed IEP be implemented in the academic areas. IHO Roth also drew up a very detailed BMP to cover Nicholas's behavioral outbursts.

On September 10, 1996 Ms. Buskirk filed another request for a due process hearing with the IDOE, asserting that the School District was not providing Nicholas with the services ordered by IHO Roth in his July 24, 1995 decision. A different IHO, Dennis Graft, was assigned to conduct a due process hearing on Ms. Buskirk's challenge. As of the date of the filing of the School District's Complaint on December 4, 1996, IHO Graft had not yet held a hearing regarding the enforcement of IHO Roth's July 24, 1995 decision. Nevertheless, IHO Graft issued an interim order on November 29, 1996. On

November 26, 1996 Ms. Buskirk notified the School District that she would not comply with any interim order issued by IHO Graft and removed Nicholas from school.

In its Complaint before the Court, the School District seeks two forms of relief. First, the School District seeks enforcement of IHO Roth's July 24, 1995 decision as it has been clarified by IHO Graft's November 29, 1996 interim order, including the return of Nicholas to school in the placement proposed by the School District in accordance with IHO Roth and IHO Graft's decisions. Second, the School District requests that the Court issue an order appointing an educational surrogate parent for Nicholas with authority to review and approve the educational decisions made by Ms. Buskirk.

## II. Discussion

Under Federal Rule of Civil Procedure 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Echoing this rule, the Seventh Circuit has noted that "[t]he first thing a federal judge should do when a complaint is filed is to check to see that federal jurisdiction is properly alleged." *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986). *See also Cruz v. I.N.S.,* 871 F.Supp. 1049, 1050 (N.D.Ill.1995).

In this case, Plaintiff asserts that the Court has jurisdiction under 20 U.S.C. § 1415(e)(2), as interpreted by *Jeremy H. by Hunter v. Mount Lebanon School District,* 95 F.3d 272, 282–83 (3rd Cir.1996), and *Family and Children's Center v. School City of Mishawaka,* 13 F.3d 1052 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994). Under 28 U.S.C. § 1331 "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Because the IDEA is a federal statute, this Court has subject matter jurisdiction over any claim that the Act permits a party to bring in federal court. We must therefore determine whether, as Plaintiff asserts, section 1415(e)(2) does in fact confer jurisdiction to hear Plaintiff's suit. That statute provides in pertinent part as follows:

Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have a right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought ... in a district court of the United States without regard to the amount in controversy.

20 U.S.C. § 1415(e)(2). Subsections (b) and (c) outline the state administrative hearing and review procedures mandated by the IDEA. The question that we must answer, then, is whether the School District is a "party aggrieved" by any such administrative hearing or administrative review. In this case, Plaintiff seeks enforcement of IHO Roth's July 24, 1995 decision as clarified by IHO Graft's November 29, 1996 interim order. We do not believe that the School District is a party aggrieved by either of these decisions under the plain wording of the statute or under the caselaw that the School District offers in support of jurisdiction or under the particular facts of this case. The School District is not appealing the administrative findings and decisions issued by IHO Roth and IHO Graft. Instead, Plaintiff is seeking to enforce those findings and decisions. A suit to enforce an administrative decision clearly is not brought by a party aggrieved by that decision.

The caselaw the School District offers in support of jurisdiction is not availing. In *Family and Children's Center v. School City of Mishawaka,* 13 F.3d 1052 (7th Cir.1994), the Seventh Circuit considered whether a nonprofit center, which provided educational programs for emotionally handicapped children under an agreement with a public school corporation in exchange for a transfer of tuition money from the school corporation, had standing to sue the school corporation to recover rent money for the center's provision of classrooms and related facilities. *Id.* at 1054–55. The court held that the center met Article III's case or controversy requirement and that other judicially imposed prudential standing limitations were inapplicable. Spe-

cifically, the court held that while the IDEA conditioned federal assistance upon a state's compliance with the substantive and procedural goals of the Act, the Act merely established a procedural minimum below which a state could not fall, but did not limit the procedural protection that a state could offer. Therefore, because Indiana law had given parties such as the center a right to file a state administrative complaint alleging a violation of the IDEA, and because the center had exhausted its state remedies, it was an aggrieved party for purposes of section 1415(e)(2). Of significance to the instant case is the fact that the administrative procedures to which the center submitted resulted in decisions adverse to the center. *Id.* at 1056. Not only was the center an "individual, groups of individuals, agency, or organization" permitted under 511 IAC 7–15–4 to seek an administrative remedy of an IDEA violation, it also clearly suffered an adverse administrative decision and, therefore, clearly was an aggrieved party for purposes of section 1415(e)(2). In the instant case, the School District's position is clearly distinguishable from that of the nonprofit center because the School District did not suffer an adverse decision in any state administrative procedure as did the nonprofit center. What the School District seeks by way of this action *obviously is more in the nature of declaratory relief rather than remedial relief.*

The School District's reliance on *Jeremy H. By Hunter v. Mount Lebanon School District,* 95 F.3d 272 (3rd Dist.1996), is similarly misplaced. In *Jeremy H.,* parents of a boy with impaired vision brought a complaint in district court to enforce in part and to challenge in part an IDEA administrative decision. The plaintiffs brought their claims challenging the administrative decision under section 1415(e)(2) but also to enforce the favorable aspects of the administrative decision under 42 U.S.C. § 1983. As the court stated in *Jeremy H.:*

> In part, the Hunters' complaint seeks to contest adverse decisions by the state hearing officer and the appellate panel. To the extent that this is the relief that the Hunters seek, their complaint would seem to be properly brought under § 1415(e)(2). However, the Hunters' complaint also ap-parently seeks in part to enforce elements of the decision of the state administrative process. There may be some question whether this aspect of the complaint can properly be pursued under § 1415(e)(2); *but the question is not one we need to resolve in the context of this case, since ... section 1983 (42 U.S.C. § 1983) provides an adequate vehicle for a suit to enforce an IDEA administrative decision.*

95 F.3d at 278 (internal citation and footnotes omitted; emphasis supplied). Plaintiff in the instant case would have the Court construe *Jeremy H.* as recognizing that section 1415(e)(2) permits a school district to bring suit to enforce an IDEA administrative decision. The Third Circuit, however, explicitly held that *section 1983* permitted such a suit, not the IDEA. While section 1983 gives a private individual a right to bring a cause of action against a municipal body (such as a public school) to vindicate substantive federal rights, the statute clearly does not give the municipality any comparable rights in a dispute with a parent or guardian.

In a footnote, the *Jeremy H.* court acknowledged that one could argue that the parents "were 'aggrieved' by the fact that the administrative orders favorable to the [plaintiffs] contained no enforcement mechanisms." *Id.* at 278, n. 10. This observation, however, is mere dicta. The argument may have some appeal in the case of a parent or guardian seeking relief from a school district who might otherwise be powerless to see an administrative decision implemented. The argument loses its punch, however, when applied to the school district itself, which as the educational provider would be the very party against whom enforcement "mechanisms" would need to be directed. We decline to find federal subject matter jurisdiction in the instant case on the Third Circuit's mere musings. The School District has failed to establish that it is an aggrieved party under section 1415(e)(2).

■ In its reply brief in support of its motion for a stay of administrative proceedings, the School District states without further elaboration that the Court has jurisdiction on the grounds that the School District

**904**

is seeking to enforce the statutory injunction created by the IDEA "stay-put" provision. (Reply Br., p. 7) Section 1415(e)(3)(A), the IDEA's "stay-put" provision, states in pertinent part:

> Except as provided in subparagraph (B), during the pendency of any proceeding conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(e)(3).[1] The Seventh Circuit has stated that "[t]he purpose of the stay-put provision is to give the child's parents the choice of keeping the child in his existing program until their dispute with the school authorities is resolved." *Rodiriecus L. v. Waukegan School Dist. No. 60,* 90 F.3d 249, 252 (7th Cir.1996) (quoting *Board of Educ. of Oak Park v. Illinois State Bd. of Educ.,* 79 F.3d 654, 659-60 (7th Cir.1996)). The court further noted the Supreme Court's own observation that the "stay-put" provision was "very much meant to strip schools of the unilateral authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." *Rodiriecus L.,* 90 F.3d at 252 (quoting *Honig v. Doe,* 484 U.S. 305, 323, 108 S.Ct. 592, 604, 98 L.Ed.2d 686 (1988)). The School District would have this Court use the "stay-put" provision as a means of preventing the Defendants, the intended beneficiaries of the short-term measure, from challenging the School District's actions. Such an interpretation turns the provision on its head and is clearly inconsistent with the purpose of the provision as it has been articulated by the Supreme Court and the Seventh Circuit. Consequently, we do not believe that the provision provides an independent jurisdictional basis for the School District's suit to enforce IHO Roth administrative decision and IHO Graft's interim order.

The School District makes no separate jurisdictional argument in regard to its petition to have the Court appoint an educational surrogate parent for Nicholas. Consequently, we find that the School District has not articulated any legitimate legal basis for this Court to exercise subject matter jurisdiction over the instant case.

### III. Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction over Plaintiff Metropolitan School District of Martinsville's suit against Defendants Holly Buskirk and her minor son, Nicholas Buskirk. Therefore, the Court dismisses sua sponte the School District's Complaint. Having no jurisdiction to the hear the Complaint, the Court does not consider the School District's motion for a stay of administrative proceedings.

It is so ORDERED.

---

1. Subparagraph (B), which is not implicated in the instant case, makes an exception for "a child with a disability who is determined to have brought a weapon to school[.]" 20 U.S.C. § 1415(e)(3)(B)(i).